UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Fortune Natural Resources Corporation, | § § § § § | |
| *Appellant,* | § § | |
| v. | § § | Civil Action H-13-3218 |
| ATP Oil & Gas Corporation and The United States Department of the Interior, | § § § § § § | |
| *Appellees.* | § | |

**Order**

Before the court is Fortune Natural Resources Corporation's ("Fortune") appeal from the final judgment of the bankruptcy court. Appellees, the United States Department of the Interior ("DOI") and ATP Oil & Gas Corporation ("ATP") have filed motions to dismiss the appeal for lack of standing and for mootness. Dkts. 8, 9. After considering the record on appeal, the parties' submissions, and the applicable law, the court finds that DOI's and ATP's motions should be GRANTED.

**I. Background**

ATP, an offshore oil and gas exploration and production operation, filed for bankruptcy relief in August 2012. In October 2013, the bankruptcy court approved a sale of some of ATP's assets to Bennu Oil & Gas, LLC ("Bennu"). Dkt. 2-322. Fortune appeals the approval of the sale. Dkt. 2 at 5.

Prior to its bankruptcy, ATP held numerous oil and gas leases located in the Gulf of Mexico. In connection with those leases, ATP was obligated to properly plug, dismantle, and decommission

wells and other production-related equipment. During the negotiation of the sale of ATP's assets to Bennu, DOI objected to the sale because it would leave ATP unable to perform decommissioning obligations on its remaining oil and gas leases. Dkt. 2-140. After Bennu became the successful bidder, DOI and Bennu began negotiating for DOI to withdraw its objection in return for the creation of a $44 million trust (the "Trust") to address the decommissioning obligations. Dkt. 2-322 at 36-37. The sale approved by the bankruptcy court provided for the execution of a trust agreement in a form acceptable to Bennu and DOI. *Id*

ATP's decommissioning obligations far exceed the $44 million contemplated by the Trust. Dkt. 8 at 5. Once the terms of the Trust are finalized, DOI will allocate the funds in its sole discretion. DOI plans to apply the funds first to ATP's decommissioning obligations for which there is no other potentially responsible party such as a co-owner or predecessor. *Id*. Once those obligations have been paid, ATP will apply any remaining funds to obligations for which there is predecessor liability. *Id.* There will not be enough money in the fund to apply any of it towards decommissioning obligations for which there is a jointly-liable co-owner. Dkt. 10 at 4. Fortune is one such jointly-liable co-owner. Dkt. 10-1.

Fortune argues that "[h]ad the funds remained with ATP and not been redirected to [DOI] to be used at its sole discretion, . . . there would have existed a pool of funds against which Fortune or any other administrative claimant could recover." Dkt. 10 at 6. Fortune's appellate brief argues that the bankruptcy court should not have given DOI discretion to apply trust funds to certain obligations over others. Dkt. 4. Whether the bankruptcy court erroneously approved the sale is not the instant concern of this court. Prior to considering the merits of Fortune's claim, the court must

determine whether Fortune has standing to bring this appeal and whether this appeal is moot in light of the bankruptcy code.

## II. ANALYSIS

### A. Standing

Standing in a bankruptcy appeal is governed by the "person aggrieved" standard, and an appellant must show "a realistic likelihood of injury." *In re Coho Energy Inc.*, 395 F.3d 198, 202-03 (5th Cir. 2004). The "person aggrieved" standard is more exacting than traditional constitutional standing. *Id.* It requires a "higher causal nexus between act and injury; appellant must show that he was 'directly and adversely affected pecuniarily by the order of the bankruptcy court' in order to have standing to appeal." *Id.* (quoting *In re Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983)). Fortune fails to demonstrate standing because it is not "directly and adversely affected" by the order of the bankruptcy court. Fortune's claim of injury is speculative at best, and speculation is not sufficient to meet the exacting standard required to establish standing in a bankruptcy appeal. *See Coho*, 395 F.3d at 203.

Fortune argues that it was adversely affected by the order of the bankruptcy court because there will be no trust funds available to it for any decommissioning expenditures. Dkt. 10 at 4. However, the record shows that Fortune would never have had access to such funds, even if the bankruptcy court had not approved the establishment of the trust. Prior to approval of the sale, there were no funds dedicated to decommissioning obligations, and there was no possibility of a reorganization. Dkt. 2-238 at 392. A sale of ATP's assets was the only way to bring any money into the bankruptcy estate, and the only way to effectuate a sale was to establish the Trust. *Id.* at 396-398. Absent approval of the sale and accompanying trust, Fortune would have been in the same

3

position—liable for all of its decommissioning obligations. While ATP's insolvency has undoubtedly affected Fortune's financial position by leaving Fortune with a financial obligation it initially intended to share with ATP, it is not the ruling of the bankruptcy court that is the cause of this harm. Accordingly, Fortune does not have standing to appeal the ruling.

**B. Mootness**

Even if Fortune had standing to appeal the bankruptcy court's ruling, the appeal would be moot. The bankruptcy code states:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). The bankruptcy code "patently protects, from later modification on appeal, an authorized sale where the purchaser acted in good faith and the sale was not stayed pending appeal" and "codifies Congress's strong preference for finality and efficiency in the bankruptcy context, particularly where third parties are involved." *In re Energytec, Inc.*, 739 F.3d 215, 218-19 (5th Cir. 2013).

Fortune does not dispute that Bennue was a good faith purchaser and that the sale was not stayed. Rather, it argues that it is not attacking the validity of the sale, but how the proceeds of the sale are being utilized. Fortune relies on the analysis in *In re Supertrail Mfg. Co., Inc.*, 383 Fed. Appx. 475, 478 (5th Cir. 2010). In *Supertrail*, the Fifth Circuit determined that § 363(m) was inapplicable to an appeal challenging which party had a superior interest in mortgage proceeds after the sale of real estate. *Id.* The sale in *Supertrail* is distinguishable from the sale in this case. In *Supertrail*, the distribution of proceeds was not integral to the sale. "Section 363(m) has been held

to apply when the challenged provision is 'integral to the sale' of the debtor's assets, which occurs 'if the provision is so closely linked to the agreement governing the sale that modifying or reversing the provision would adversely alter the parties' bargained-for exchange'" *Energytec*, 739 F.3d at 220 (quoting *In re Trism, Inc.*, 328 F.3d 1003, 1007 (8th Cir. 2003)).  As noted above, the consummation of the sale was dependent on the creation of the trust.  Without the establishment of the trust, DOI would have maintained its objection, and there would have been no sale.  Accordingly, the establishment of the trust is integral to the sale of ATP's assets; § 363(m) prevents this court from modifying the sale, and this appeal is moot.

### III. Conclusion

Because Fortune lacks standing to appeal the order of the bankruptcy court and any appeal would be moot, the court GRANTS the motions to dismiss filed by DOI and ATP.  Fortune's bankruptcy appeal is DISMISSED.

It is so ORDERED.

Signed at Houston, Texas on February 19, 2015.

_____
Gray H. Miller
United States District Judge

5